1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

HAROLD MAWYER,

Case No. 2:16-cv-01140-JAD-GWF

8

Plaintiff,

**REPORT AND RECOMMENDATION**

v.

9

NANCY BERRYHILL, Commissioner of
Social Security,

**Re: Motion for Summary
Judgment (ECF No. 16)**

10
11
12

Defendant.

13
14

15      This case involves judicial review of administrative action by the Commissioner of Social

16  Security denying Harold Mawyer's claim for disability benefits under Title II of the Social

17  Security Act.  Plaintiff's Complaint (ECF No. 4) was filed on October 7, 2016.  Defendant filed

18  her Answer (ECF No. 10) on December 30, 2016.  Plaintiff filed his Motion for Summary

19  Judgment (ECF No. 16), on April 17, 2017, and the Commissioner filed her Cross-Motion to

20  Affirm and Opposition (ECF No. 18) on May 17, 2017.  Plaintiff filed his Reply (ECF No. 20)

21  on May 30, 2017.

22                                              **BACKGROUND**

23      **A. Procedural History**

24      Plaintiff filed an application for supplemental security income on December 1, 2010.

25  Administrative Record ("AR") 395-403.  The Social Security Administration denied Plaintiff's

26  claim on June 14, 2011.  AR 180-184.  Plaintiff's request for reconsideration was denied on

27  October 3, 2011.  AR  185-188.  He requested a hearing before an Administrative Law Judge

28  ("ALJ") which was conducted on June 6, 2013.  AR 44-85.  The ALJ decided on August 28,

2013 that Plaintiff was not disabled.  AR 153-166.  The Appeals Council granted Plaintiff's

administrative appeal on December 6, 2014, and remanded the claim to the ALJ to obtain further

evidence and to reevaluate certain issues.  AR 174-176.  A hearing was conducted on March 23,

2015 before a different ALJ.  AR 86-131.  The ALJ issued his decision on June 15, 2015 and

concluded that Plaintiff was not disabled from the date of his application, December 1, 2010,

through the date of the decision.  AR 15-34.  Plaintiff's request for review to the Appeals

Council was denied on March 23, 2016.  AR 1-3.  He then commenced this action pursuant to 42

U.S.C. § 405(g).  This matter has been referred to the undersigned magistrate judge for a report

of findings and recommendations pursuant to 28 U.S.C. §§ 636 (b)(1)(B) and (C).

### B. Factual Background

Plaintiff's motion for summary judgment is limited to the issue of whether the ALJ's

assessment of his residual functional capacity requires a finding of disability in light of the

vocational expert's testimony.  Plaintiff does not challenge the ALJ's findings at steps one

through three of the sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)-(f).  Nor

does he challenge the ALJ's assessment of his residual functional capacity and the step four

finding that Plaintiff is not capable of performing his past relevant work.

During the March 23, 2015 hearing, the ALJ asked the vocational expert to assume the

following hypothetical individual:

> Q.  Okay.  Given a person of [Plaintiff's] age limited to sedentary work, all
> posturals occasional except he could never climb ladders, ropes, scaffolds.
> Has a seizure precaution among other things.
>
> He would need to avoid concentrated exposure chemicals and pulmonary
> irritants such as fumes, odors, dust, gases, and poorly ventilated areas.  As a
> seizure precaution among other things, he would need to avoid all exposure to
> hazardous machinery, unprotected heights, and operation and control of
> moving machinery.
>
> Additionally, he could have no exposure to extremely bright or flashing lights
> such as strobe or search light or extremely bright sunshine unless he's wearing
> dark protective glasses.  He would need to avoid, I already mentioned
> chemicals and pulmonary irritants.
>
> He's limited to simple tasks typical of unskilled occupations with no
> production or pace work, and only occasional interaction with the public and

1    coworkers. With those limitations, is there work that such a person could
     perform at the sedentary level?

2    AR 114.

3    The vocational expert testified that the hypothetical individual could perform the

4    sedentary jobs of addresser, DOT No. 209.587-010, leaf tier, DOT No. 529.687-138, and bander,

5    hand, DOT No. 929.687-058, which are available in substantial numbers in the national

6    economy.[1] He testified that the individual could perform these jobs even if he needed a cane to

7    ambulate. The individual would not be able to perform these jobs, however, if he needed a

8    sit/stand option which allowed him to work by alternating between sitting and standing. The

9    ALJ asked whether the individual would be able to perform any sedentary work with the

10   requirement for a sit/stand option. The vocational expert stated that there was such work, but it

11   would require contact with the public. AR 115.

12   The ALJ then asked the vocational expert to assume that the individual could have "brief

13   and superficial" contact. He also broadened the residual functional capacity assessment to

14   include the ability to perform light exertional work. The vocational expert responded that the

15   individual would be able to perform the light exertional level jobs of parking lot attendant, DOT

16   No. 915.473-0, pari-mutuel ticket seller, DOT NO. 211.467-022, toll collector, DOT No.

17   211.462-038, and information clerk, DOT No. 237.367-018, which also exist in substantial

18   numbers in the national economy. The vocational expert testified that the occupational base for

19   the parking lot attendant and information clerk jobs would be reduced 50 percent based on the

20   sit/stand option. There would be no such reduction, however, for the pari-mutuel ticket seller or

21   toll collector jobs. AR 116-117.

22   Plaintiff's counsel resummarized the ALJ's statement of the hypothetical individual's

23   residual functional capacity to include that he would be "[l]imited to simple tasks. No

24   production or pace work, and occasional contact with the public and coworkers." AR 119-120.

25

26   [1]"DOT" stands for Dictionary of Occupational Titles. The job of addresser, DOT 209.587-010, includes
     addressing by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for
     mailing. It may also involve mail sorting. The job of leaf tier, DOT 529.687-138, involves tying tobacco

27   leaves in hands (bundles) to facilitate processing. The job of bander, hand, DOT 929.687-058, involves
     fastening plastic or metal bands around stacks, bundles, or palletized articles prior to storage or shipment,

28   using a strapping tool or clamp.

3

The ALJ interjected that the hypothetical individual's contact with the public and coworkers would be "[b]rief and superficial." AR 120. Plaintiff's counsel thereupon asked the vocational expert if he considered "brief and superficial contact with coworkers" to include supervisors. The vocational expert responded that he did. Under further questioning, the vocational expert stated that employees interact with their supervisors occasionally to less than occasionally. He agreed that the ability to accept instruction and respond appropriately to criticism from supervisors is critical to performing unskilled work. AR 120.

The vocational expert further testified as follows:

> Q.  Okay.  If the person is limited, well, do you agree that criticism by its very nature is never superficial?
>
> A.  Well, it depends upon who, whether it's constructive criticism.  It depends on the nature of the person.

AR 120-121.

The ALJ asked Plaintiff's counsel to distinguish between criticism and instruction. AR 121. Plaintiff's counsel referred to the Social Security Program Operations Manual System ("POMS"), DI 25020.010, Mental Limitations, stating: "And in paragraph (b) (3) (k), it speaks in the conjunctive. Accept instruction. . . . And respond appropriately to criticism from supervisors." AR 121. Plaintiff's counsel further stated:

> And so the Commissioner promulgates POMS interpreting the mental residual functional capacity assessment in the statute and the regulations, and tells us that accepting instruction and responding appropriately to criticism from supervisors is critical. And so most vocational experts agree with me that, that criticism by its very nature no matter how well-intentioned the employer is, it's never superficial. It's always serious.

AR 121-122.

The ALJ responded:

> . . . I suppose you could interpret it a couple of different ways.  Superficial could be in terms of the time, very fleeting.  Or superficial could be, you know, not very much in-depth as opposed to, Harold, you need to do it this way.  So that's a little bit deeper.

AR 122.

Plaintiff's counsel asserted that "[w]hen we look at the broad array of cases, we find that the state agency almost never, we never see cases at this level where they find superficial contact with supervisors because its so critical"  AR 122.  Plaintiff's counsel then asked the vocational expert the following question:

> Q.  So if the person can't tolerate, isn't going to respond appropriately to criticism from supervisors because they really can only tolerate superficial, occasional superficial contact with coworkers and supervisors, do you think they could sustain work?
>
> A.  I don't believe so, Counsel, no.

AR 122-123.

**C. The ALJ's Decision**

The ALJ found that Plaintiff had the following severe impairments:  Degenerative disc disease of the lumbar spine, coronary artery disease ("CAD"), mitral valve disorder, chronic obstructive pulmonary disorder ("COPD"), depression, anxiety, bipolar disorder and obesity. AR 18.  The ALJ provided an extensive discussion and analysis of Plaintiff's statements and testimony, the medical records, and the opinions of treating and examination physicians.  AR 19-32.  Based on that analysis, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except as follows:

> he could never climb ropes, ladders or scaffolds but could occasionally climb ramps and stairs; he could occasionally balance, bend, kneel, crouch and crawl; he was required to avoid all exposure to hazardous machinery, unprotected heights, operational control of moving machinery and exposure to extremely bright or flashing lights such as strobe or search lights or extremely bright sunshine unless wearing dark glasses; he was required to avoid concentrated exposure to chemicals and pulmonary irritants such as smoke, dust, fumes, odors, gases and poorly ventilated areas; additionally, due to pain syndrome, he was limited to simple tasks typical of unskilled occupations with no production rate pace work and only brief and superficial interaction with the public and coworkers.

AR 23.

The ALJ's finding that Plaintiff was limited to simple tasks typical of unskilled occupations with no production rate pace work and only brief and superficial interaction with the public and coworkers was based, in part, on the opinion of Dr. Jessica Browning, who performed

5

1    a psychological evaluation of Plaintiff on January 22, 2015. Dr. Browning stated that Plaintiff

2    demonstrated that he was "able to understand, remember, and carry out simple, but not detailed

3    or complex instructions." She also stated that based on Plaintiff's self-reports, "he appears to be

4    severely impaired in his ability to interact appropriately with the public, co-workers, or with

5    supervisors. However, based on his observed behavior, he does not seem impaired in his ability

6    to interact appropriately with the public, co-workers, or with supervisors. As discussed, his self-

7    reports must be interpreted with caution." AR 1468. The ALJ gave great weight to Dr.

8    Browning's opinion, noting that it is consistent with the record as a whole. AR 31.

9        Based on his assessment of Plaintiff's residual functional capacity, the ALJ stated that he

10   was not able to perform his past work as a material handler, cable installer, repairer, or

11   swimming pool servicer. He found, however, that Plaintiff was able to perform the light

12   exertional level jobs of parking lot attendant, paramutual ticket seller, and toll collector. He

13   could also perform the sedentary jobs of addresser, left tier (sic), and bander, hand. The ALJ

14   stated that Plaintiff did not require a sit/stand option. He therefore concluded that Plaintiff was

15   not disabled from December 1, 2010 through the date of his decision. AR 33-34.

16                                    **DISCUSSION**

17       **I. Standard of Review**

18       A federal court's review of an ALJ's decision is limited to determining (1) whether the

19   ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the

20   proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v.*

21   *Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence

22   as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

23   reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL

24   1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see*

25   *also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole

26   and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir.

27   1993). Where the factual findings of the Commissioner of Social Security are supported by

28   substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g).

1    Hence, where the evidence may be open to more than one rational interpretation, the Court is

2    required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (quoting

3    *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)); *see also Vasquez v. Astrue*, 572 F.3d

4    586, 591 (9th Cir. 2009).  The court may not substitute its judgment for that of the ALJ if the

5    evidence can reasonably support reversal or affirmation of the ALJ's decision.  *Flaten v. Sec'y of*

6    *Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

7         It is incumbent on the ALJ to make specific findings so that the court need not speculate

8    as to the findings.  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v.*

9    *Richardson*, 500 F.2d 309 (3rd Cir. 1974)).  In order to enable the court to properly determine

10   whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings

11   "should be as comprehensive and analytical as feasible and, where appropriate, should include a

12   statement of subordinate factual foundations on which the ultimate factual conclusions are

13   based." *Lewin*, 654 F.2d at 635.

14        In reviewing the administrative decision, the court has the power to enter "a judgment

15   affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or

16   without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In the alternative, the court

17   "may at any time order additional evidence to be taken before the Commissioner of Social

18   Security, but only upon a showing that there is new evidence which is material and that there is

19   good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

20        **II. Disability Evaluation Process**

21        To qualify for disability benefits under the Social Security Act, a claimant must show

22   that: (a) he/she suffers from a medically determinable physical or mental impairment that can be

23   expected to result in death or that has lasted or can be expected to last for a continuous period of

24   not less that twelve months; and (b) the impairment renders the claimant incapable of performing

25   the work that the claimant previously performed and incapable of performing any other

26   substantial gainful employment that exists in the national economy.  *Tackett v. Apfel*, 180 F.3d

27   1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).  The claimant has the initial

28   burden of proving disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied,*

                                            7

517 U.S. 1122 (1996). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform a significant number of other jobs that exist in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007). Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). The ALJ correctly set forth five steps in his decision, AR 17–18, and they will not be repeated here.

### III. Whether the ALJ erred in finding that Plaintiff was able to perform unskilled work.

Plaintiff argues that the ALJ erred in finding that he was able to perform unskilled work in light of his assessment that Plaintiff was "limited to simple tasks typical of unskilled occupations with no production rate pace work and only brief and superficial interaction with the public and coworkers." Plaintiff argues that based on the vocational expert's testimony, he was unable to perform either sedentary or light unskilled jobs.

Plaintiff relies on the Social Security Program Operations Manual System ("POMS"), DI 25020.010, Mental Limitations, Section B.3., which lists a number of mental abilities that a claimant must have in order to perform unskilled work, including the ability to accept "instructions and respond appropriately to criticism from supervisors." Subsection B.3.k. He also relies on Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *6, which states that "an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when supervision is remote or indirect, can be intolerated (sic) for some mentally impaired persons. Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment." Plaintiff also cites 20 C.F.R. § 416.945(c) which states that "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past

work and other work."   Plaintiff also relies on *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 1602 (1999) in which the Supreme Court stated that in determining whether an individual is disabled within the meaning of the Social Security Act, the Social Security Administration "does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI."

Plaintiff argues that "[i]nteracting with supervisors and accepting criticism from supervisors constitutes a function resting at the core of unskilled work activity.  The inability to respond appropriately to criticism from supervisors is fatal to the ability to engage in substantial gainful activity, a proposition supported by the regulations, ruling and policy manual, and confirmed by the vocational expert testimony on cross-examination."  *Motion* (ECF No. 16) at 11.

The Commissioner argues that "there is no doubt that the ALJ meant 'brief and superficial' to be a limitation on the <u>frequency</u> of interaction.  Indeed, the ALJ original (sic) articulated his hypothetical in terms of 'occasional interaction' (AR 114).  When the expert sought a clarification on contact, the ALJ explained that 'brief and superficial would be all right' (AR 116).  The ALJ's subsequent statements concerned the amount of interaction; for example, confirming with the expert that the typical supervisor interaction occurred 'occasionally to less than occasionally' (AR 120)."  *Cross-Motion* (ECF No. 18) at 3.  The Commissioner argues that the record provides sufficient support for the ALJ's conclusion that Plaintiff was able to perform the sedentary and light unskilled jobs that the ALJ identified at step five of the sequential process.  *Id.* at 3-5.

There is case law, not cited by either party, on the issue of whether an individual who is limited to "only brief and superficial interaction with the public and coworkers" is able to perform unskilled work.  In *Sherman v. Colvin*, 2016 WL 71658990, at *3 (D.N.H. Dec. 8, 2016), the ALJ found that the claimant could "maintain appropriate superficial interactions with coworkers" and was, therefore, able to perform sedentary work.  The ALJ made this determination "[w]ithout relying upon the testimony of a vocational expert ("VE"), and without

1    providing an explanation or identifying any evidence" to support his conclusion that the

2    claimant's "additional limitations had little or no effect on the occupational base of unskilled

3    sedentary work." *Id.* The court stated that the term "superficial interaction" was somewhat

4    nebulous, and the ALJ did not distinguish between superficial and non-superficial interactions, or

5    explain how a capacity for superficial interaction is sufficient to perform a large number of jobs.

6    *Id.* at *5.

7        *Sherman* cited *Stewart v. Colvin*, 2013 WL 3852775, at *6 (W.D.Okla. July 24, 2013), in

8    which the court reversed and remanded the denial of benefits where ALJ found that the claimant,

9    who could only "relate to supervisors and peers on a superficial work basis," was able to perform

10    unskilled work. The ALJ did not obtain expert vocational testimony to support this conclusion.

11    His step five decision was based only on the grid rules and was not supported by substantial

12    evidence in the record. *Id.* at *6.

13        *Sherman* also cited *Lewis v. Astrue*, 2012 WL 1022219 (W.D.Wash. Mar. 5, 2012), R&R

14    adopted by 2012 WL 1022202 (Mar. 26, 2012), in which the ALJ found that the claimant, who

15    was limited to superficial contacts with coworkers and the public, was able to perform unskilled

16    work. The ALJ did not obtain vocational expert testimony to support this conclusion. The court

17    stated  that "the restriction to only superficial contact with co-workers is a significant non-

18    exertional limitation that makes reliance on the Grids inappropriate here. It is difficult to see how

19    such a limitation—as opposed to, say, only occasional contact with one's coworkers—would not

20    have a significant impact on plaintiff's ability to perform a full range of sedentary work. *See*

21    SSR 85–15, 1985 WL 56857 at *4 (noting '[a] substantial loss of ability' to respond

22    appropriately to co-workers 'would severely limit the potential occupational base')." 2012 WL

23    1022219, at *10.

24        The *Sherman* court stated that *Lewis* indirectly provides a rationale as to why a limitation

25    to superficial interaction with supervisors and coworkers is sufficiently serious, so as to require

26    vocational expert testimony regarding the claimant's ability to perform other work. The court

27    stated:

28    . . .

> Without saying so directly, the court in <u>Lewis</u> necessarily assumed that a person's ability to respond <u>appropriately</u> to supervision and coworkers is significantly affected by a limitation to <u>superficial</u> interactions. That assumption, in turn, seems reasonable. If the only interactions with supervisors and coworkers that are necessary to perform all unskilled jobs are superficial interactions, then a limitation to superficial interactions with supervisors and coworkers would not significantly affect the occupational base of unskilled work. But the ALJ offered neither an explanation nor any evidentiary support for such a proposition, and it is not self-evident. Conversely, a person who is limited to superficial interactions with supervisors would be able to respond appropriately to supervision provided through superficial interactions, but would not be able to respond appropriately to supervision provided through interactions that must be more than superficial. In the absence of any reason to believe that supervision for <u>all</u> unskilled jobs may be provided exclusively through superficial interactions, this court is persuaded by <u>Stewart</u>, <u>Johnson</u>, and <u>Lewis</u> that the ALJ's reliance upon the Grids was inappropriate.

2016 WL 71658990, at *6.

*Sherman* also cited *Moon v. Colvin*, 2015 WL 1188602 (W.D.Wash. Mar. 16, 2015) in which the ALJ obtained testimony from a vocational expert, but did not incorporate a limitation to superficial interactions with coworkers in his hypothetical question to the expert. In reversing the denial of benefits, the court stated that "[b]ecause the hypothetical question did not include all of Moon's assessed limitations, the vocational expert's testimony cannot support a finding that Moon can perform jobs in the national economy. *See Matthews,* 10 F.3d at 680. The Commissioner, therefore, failed to meet her burden at step five of the analysis, and this error cannot be deemed harmless." *Id.* at *5. *See also Hoopai v. Astrue*, 499 F.3d at 1076 ("at step five a vocational expert's testimony is required when a non-exertional limitation is 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations.").

In *Blackburn v. Colvin*, 761 F.3d 853 (8th Cir. 2014), the Eighth Circuit affirmed the denial of benefits where the ALJ's decision was supported by vocational expert testimony. The ALJ posed a hypothetical question to the vocational expert which included the following limitation: The claimant could have "only brief and superficial interaction with the public and only occasional interaction with supervisors." The vocational expert testified that the claimant would not be able to perform his past relevant work which required "significant interaction" with coworkers and supervisors, but could perform other work such as final assembler of optical

frames, laundry folder, or night stocker in a "big box" store. *Id.* at 857. In affirming the denial of the claimant's petition for judicial review, the court stated:

> The ALJ incorporated all of Blackburn's impairments which he found credible and limited the hypothetical individual to "brief and superficial interaction with the public and coworkers and only occasional interaction with supervisors." This was based on evidence of Blackburn's impairments, including the vocational expert's testimony that he could not return to his past relevant work because it "required significant interaction with coworkers and supervisors." *See Davis,* 239 F.3d at 966; *Prosch,* 201 F.3d at 1015.

761 F.3d. at 861. Although the quoted passage does not expressly refer to the vocational expert's testimony that the claimant could perform other unskilled work, the court implicitly accepted this testimony as a valid basis for the ALJ's decision. *Blackburn* is distinguishable from this case in that the ALJ in *Blackburn* compartmentalized the claimant's interaction with others to (1) "only brief and superficial interaction with the public," and (2) "only occasional interaction with supervisors." In this case, the ALJ limited Plaintiff to "only brief and superficial interaction with the public and coworkers."

This Court agrees with *Sherman*, and the other district court decisions discussed above, that where the ALJ concludes that the claimant is functionally limited to "only brief and superficial interaction with the public and coworkers," he must adduce testimony from a vocational expert that there are other jobs that the claimant can perform with such a limitation.

In this case, the ALJ's initial hypothetical question posited that Plaintiff was "limited to simple tasks typical of unskilled occupations with . . . only occasional interaction with the public and coworkers." AR 114. In response to that hypothetical, the vocation expert testified that Plaintiff could perform the sedentary jobs of addresser, leaf tier, and bander, hand. AR 115. The ALJ then asked whether the hypothetical individual could perform these jobs if he required a sit/stand option. The vocational expert testified that the individual would not be able to perform the listed jobs with this additional limitation. The ALJ asked if there were any sedentary jobs the hypothetical individual could perform if a sit/stand option was required. The vocational expert stated that there were, but they would require contact with the public. AR 115.

1    The ALJ then further modified the hypothetical as follows: "Let's say brief and

2    superficial would be all right." AR 116. In response to this limitation, the vocational expert

3    identified the job of parking lot attendant, which is a light exertional level job. The ALJ

4    thereupon modified the hypothetical to include the ability to perform light work, with the

5    limitation of "brief and superficial" contact and a sit/stand option. The ALJ did not state whether

6    the phrase "brief and superficial" applied only to contact with the public, or also included contact

7    with coworkers and supervisors. The vocational expert testified that a hypothetical individual

8    with these limitations could perform the light exertional level jobs of parking lot attendant, pari-

9    mutuel ticket seller, toll collector, and information clerk. AR 116-117.

10    On cross-examination, Plaintiff's counsel sought to return the vocational expert to a

11    hypothetical individual who could perform sedentary work, and who was limited to simple tasks,

12    no production or pace work, and *occasional* contact with the public and coworkers. AR 119-

13    120. The ALJ interrupted with the statement "brief and superficial." This engendered the

14    exchanges between Plaintiff's counsel, the vocational expert and the ALJ regarding the

15    necessary level of interaction between the individual and his coworkers or supervisors. AR 120-

16    122.

17    Plaintiff's counsel asked the vocational expert if he considered brief and superficial

18    contact with coworkers to include supervisors. The vocational expert stated that he did. AR

19    120. The ALJ interrupted and asked how often people normally interact with their supervisors.

20    The vocational expert answered: "Occasionally to less than occasionally." AR 120. Plaintiff's

21    counsel asked the vocational expert if he "agree[d] that the ability to accept instruction and

22    respond appropriately to criticism from supervisors is critical to performing unskilled work."

23    The vocation expert agreed with that statement. AR 120. Plaintiff's counsel, the vocational

24    expert, and the ALJ then engaged in a discussion whether criticism can ever be superficial. AR

25    120-122. This culminated in the following question and answer:

26    Q. So if the person can't tolerate, isn't going to respond appropriately to
     criticism from supervisors because they really can only tolerate superficial,

27    occasional superficial contact with coworkers and supervisors, do you think
     they could sustain work?

28

13

A.  I don't believe so, Counsel, no.

AR 122-123.

The ALJ did not follow-up with the vocational expert in response to the foregoing question and answer.  The testimonial record would have been clearer if the ALJ had permitted Plaintiff's counsel to ask the vocational expert hypothetical questions without interruption, and if the ALJ, Plaintiff's counsel and the vocational expert had not engaged in back-and-forth arguments about the meaning of terms that obscured, rather than clarified the record.

In any event, the record does not show that the vocational expert testified that an individual who is limited to only brief and superficial interaction with coworkers, including supervisors, is able to perform the sedentary and light unskilled jobs that the ALJ identified at step five of the sequential process.  The vocational expert's answer to Plaintiff counsel's ultimate question, in fact, supports the contrary conclusion.  The Commissioner, therefore, failed to meet her burden at step five to prove that Plaintiff could perform other unskilled jobs that were available in significant numbers in the national economy.  *Hoopai*, 499 F.3d at 1074-75.

### IV. Whether this case should be remanded for an award of benefits or for further administrative proceedings.

Plaintiff argues that this case should be remanded to the Commissioner with instructions to pay benefits.  The Commissioner argues that if the ALJ's decision is reversed, then the case should be remanded for further administrative proceedings.  The Ninth Circuit has established a three-part credit-as-true standard which must be satisfied in order to remand a case to the Social Security Administration with instructions to calculate and award benefits.  The test requires the court to find that (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence was credited as true, the ALJ would be required to find the claimant disabled on remand.  *Garrison v. Colvin*, 759 F.3d at 1020 (citing *Ryan v. Commissioner of Social. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Benecke v. Barnhart*, 379 F.3d

14

587, 595 (9th Cir. 2004); and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

*Garrison* stated that it may be an abuse of discretion not to remand with direction to make payment when all three conditions are met.  The credit-as-true rule envisions some flexibility, however, and a case should be remanded for further proceedings if an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.  *Id.* at 1020–21.  In *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101–02 (9th Cir. 2014), the court stated that even when the elements of the credit-as-true rule are present, the decision to remand for additional evidence or simply to award benefits is in the discretion of the court.  This case does not present the typical scenario for application of the credit-as-true rule involving the improper rejection of claimant testimony or expert medical opinion regarding the extent or severity of the claimant's impairments.  Here, those issues are not in dispute.

The record in this case is muddled as to whether the vocational expert opined or will opine that Plaintiff is able or unable to perform unskilled work if he is limited to "only brief and superficial interaction with the public and coworkers."  The expert's answer to Plaintiff's counsel's question, however, supports the conclusion that Plaintiff is not able perform such work.  In somewhat similar circumstances, the courts in *Sherman*, *Stewart*, *Lewis*, and *Moon* remanded the cases to the Commissioner for further administrative proceedings.  This Court recommends that this case be remanded for further administrative proceedings to determine from the vocational expert whether Plaintiff is able to perform other unskilled work based on his residual functional capacity as determined by the ALJ in his June 15, 2015 decision.  Accordingly,

**<u>RECOMMENDATION</u>**

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 16) be **granted**, and that Defendant's Cross-Motion to Affirm (ECF No. 18) be **denied**.

**IT IS FURTHER RECOMMENDED** that this case be remanded to the Commissioner

. . .

. . .

to determine from the vocational expert whether Plaintiff is able to perform other unskilled work in in light of his residual functional capacity as determined by the ALJ in his June 15, 2015 decision.

## NOTICE

Pursuant to Local Rule IB 3–2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

Dated this 28th of February, 2019.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**